MICHAEL FAILLACE & ASSOCIATES, P.C.
60 East 42nd Street, Suite 4510
New York, New York 10165
Telephone: (212) 317-1200
Facsimile: (212) 317-1620
*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------X
GERARDO JUAREZ, GUILLERMO
MENDEZ, JOSE MARTINEZ CASALEZ,
DAMIAN VALENCIA, HELDER
MARTINEZ, and SABAS HERNANDEZ,
*individually and on behalf of others similarly*
*situated,*

|  |  |
|---|---|
| | **COMPLAINT** |
| | **COLLECTIVE ACTION UNDER** |
| | **29 U.S.C. § 216(b)** |
| *Plaintiffs*, | |
| -against- | **ECF Case** |

DOLLY FOOD CORP.  (D/B/A
MOONSTRUCK EATERY) and RAJIV
CHOWDHURY,

                                    *Defendants.*
-------------------------------------------------------X

Plaintiffs Gerardo Juarez, Guillermo Mendez, Jose Martinez Casalez, Damian Valencia,

Helder Martinez, and Sabas Hernandez, individually and on behalf of others similarly situated

(collectively, "Plaintiffs"), by and through their attorneys, Michael Faillace & Associates, P.C.,

upon their knowledge and belief, and as against Dolly Food Corp. (d/b/a Moonstruck Eatery),

("Defendant Corporation") and Rajiv Chowdhury, ("Individual Defendant"), (collectively,

"Defendants"), allege as follows:

## NATURE OF ACTION

1.      Plaintiffs are former employees of Defendants Dolly Food Corp. (d/b/a Moonstruck

Eatery) and Rajiv Chowdhury.

2.      Defendants own, operate, or control a diner, located in the midtown east

neighborhood of Manhattan in New York City.

3.      Upon information and belief, individual Defendant Rajiv Chowdhury, serve or served as owner, manager, principal, or agent of Defendant Corporation and, through this corporate entity, operates or operated the midtown East diner as a joint or unified enterprise.

4.      Plaintiffs were employed as dishwashers, delivery workers, cooks, and a food preparer at the Midtown East diner located at 250 East 58th Street New York, New York 10022.

5.      Plaintiff Mendez and Plaintiff Casalez, were ostensibly employed as delivery workers. However, they were required to spend a considerable part of their work day performing non-tipped duties, including but not limited to dishwashing, twisting and tying up cardboard boxes, taking out the garbage, cleaning bathrooms, refrigerators, basement, main room, grills, and the kitchen, bringing up food and other items for the cooks and carrying down and stocking deliveries (hereafter the "non-tipped duties").

6.      At all times relevant to this Complaint, Plaintiffs worked for Defendants in excess of 40 hours per week, without appropriate minimum wage, overtime, and spread of hours compensation for the hours that they worked.

7.      Rather, Defendants failed to maintain accurate recordkeeping of the hours worked and failed to pay Plaintiffs appropriately for any hours worked, either at the straight rate of pay or for any additional overtime premium.

8.      Further, Defendants failed to pay Plaintiffs the required "spread of hours" pay for any day in which they had to work over 10 hours a day.

9.      Defendants employed and accounted for Plaintiffs Mendez and Casalez as delivery workers in their payroll, but in actuality their duties required a significant amount of time spent performing the non-tipped duties alleged above.

10.     Regardless, at all relevant times, Defendants paid Plaintiffs Mendez and Casalez at a rate that was lower than the required tip-credit rate.

11.     However, under both the FLSA and NYLL, Defendants were not entitled to take a tip credit because Plaintiff Mendez and Plaintiff Casalez non-tipped duties exceeded 20% of each workday, or 2 hours per day, whichever is less in each day.  12 N.Y. C.R.R. §146.

12.     Upon information and belief, Defendants employed the policy and practice of disguising Plaintiff Mendez and Plaintiff Casalez' s actual duties in payroll records by designating them as delivery workers instead of non-tipped employees. This allowed Defendants to avoid paying Plaintiffs at the minimum wage rate and enabled them to pay them at or below the tip-credit rate.

13.     Defendants' conduct extended beyond Plaintiffs to all other similarly situated employees.

14.     At all times relevant to this Complaint, Defendants maintained a policy and practice of requiring Plaintiffs and other employees to work in excess of forty (40) hours per week without providing the minimum wage and overtime compensation required by federal and state law and regulations.

15.     Plaintiffs now bring this action on behalf of themselves, and other similarly situated individuals, for unpaid minimum and overtime wages pursuant to the Fair Labor Standards Act of 1938, 29 U.S.C. § 201 *et seq.* ("FLSA"), and for violations of the N.Y. Labor Law §§ 190 *et seq.* and 650 *et seq.* (the "NYLL"), and the "spread of hours" and overtime wage orders of the New York Commissioner of Labor codified at N.Y. COMP. CODES R. & REGS. tit. 12, § 146-1.6 (herein the "Spread of Hours Wage Order"), including applicable liquidated damages, interest, attorneys' fees and costs.

16.     Plaintiffs seek certification of this action as a collective action on behalf of themselves, individually, and all other similarly situated employees and former employees of Defendants pursuant to 29 U.S.C. § 216(b).

**JURISDICTION AND VENUE**

17.    This Court has subject matter jurisdiction under 28 U.S.C. § 1331 (federal question) and the FLSA, and supplemental jurisdiction over Plaintiffs' state law claims under 28 U.S.C. § 1367(a).

18.    Venue is proper in this district under 28 U.S.C. § 1391(b) and (c) because all, or a substantial portion of, the events or omissions giving rise to the claims occurred in this district, Defendants maintain their corporate headquarters and offices within this district, and Defendants operate a diner located in this district. Further, Plaintiffs were employed by Defendants in this district.

**PARTIES**

*Plaintiffs*

19.    Plaintiff Gerardo Juarez ("Plaintiff Juarez" or "Mr. Juarez") is an adult individual residing in Queens County, New York.

20.    Plaintiff Juarez was employed by Defendants at Moonstruck Eatery from approximately November 2017 until on or about May 17, 2020.

21.    Plaintiff Guillermo Mendez ("Plaintiff Mendez" or "Mr. Mendez") is an adult individual residing in Queens County, New York.

22.    Plaintiff Mendez was employed by Defendants at Moonstruck Eatery from approximately March 2018 until on or about March 12, 2020.

23.    Plaintiff Jose Martinez Casalez ("Plaintiff Casalez" or "Mr. Casalez") is an adult individual residing in Queens County, New York.

24.    Plaintiff Casalez was employed by Defendants at Moonstruck Eatery from approximately September 2019 until on or about March 17, 2020.

25.    Plaintiff Damian Valencia ("Plaintiff Valencia" or "Mr. Valencia") is an adult individual residing in Queens County, New York.

26.    Plaintiff Valencia was employed by Defendants at Moonstruck Eatery from approximately February 2018 until on or about March 17, 2020.

27.    Plaintiff Helder Martinez ("Plaintiff Martinez" or "Mr. Martinez") is an adult individual residing in Queens County, New York.

28.    Plaintiff Martinez was employed by Defendants at Moonstruck Eatery from approximately 2009 until on or about March 17, 2020.

29.    Plaintiff Sabas Hernandez ("Plaintiff Hernandez" or "Mr. Hernandez") is an adult individual residing in Queens County, New York.

30.    Plaintiff Hernandez was employed by Defendants at Moonstruck Eatery from approximately 2005 until on or about March 15, 2020.

*Defendants*

31.    At all relevant times, Defendants owned, operated, or controlled a diner, located at 250 East 58th Street New York, New York 10022 in the midtown east section of Manhattan New York.

32.    Upon information and belief, Dolly Food Corp. (d/b/a Moonstruck Eatery) is a domestic corporation organized and existing under the laws of the State of New York. Upon information and belief, it maintains its principal place of business at 250 East 58th Street New York, New York 10022.

33.    Defendant Rajiv Chowdhury is an individual engaging (or who was engaged) in business in this judicial district during the relevant time period. Defendant Rajiv Chowdhury is sued individually in his capacity as owner, officer and/or agent of Defendant Corporation. Defendant Rajiv Chowdhury possesses operational control over Defendant Corporation, an ownership interest in Defendant Corporation, and controls significant functions of Defendant Corporation. He determines the wages and compensation of the employees of Defendants, including Plaintiffs,

establishes the schedules of the employees, maintains employee records, and has the authority to hire and fire employees.

## FACTUAL ALLEGATIONS

### *Defendants Constitute Joint Employers*

34.     Defendants operate a diner located in Uptown east neighborhood in Manhattan.

35.     Individual Defendant, Rajiv Chowdhury, possesses operational control over Defendant Corporation, possesses ownership interests in Defendant Corporation, and controls significant functions of Defendant Corporation.

36.     Defendants are associated and joint employers, act in the interest of each other with respect to employees, pay employees by the same method, and share control over the employees.

37.     Each Defendant possessed substantial control over Plaintiffs' (and other similarly situated employees') working conditions, and over the policies and practices with respect to the employment and compensation of Plaintiffs, and all similarly situated individuals, referred to herein.

38.     Defendants jointly employed Plaintiffs (and all similarly situated employees) and are Plaintiffs' (and all similarly situated employees') employers within the meaning of 29 U.S.C. 201 *et seq*. and the NYLL.

39.     In the alternative, Defendants constitute a single employer of Plaintiffs and/or similarly situated individuals.

40.     Upon information and belief, Individual Defendant Rajiv Chowdhury operates Defendant Corporation as either an alter ego of himself and/or fails to operate Defendant Corporation as an entity legally separate and apart from himself, by among other things:

> a)   failing to adhere to the corporate formalities necessary to operate Defendant Corporation as a Corporation,

b)  defectively forming or maintaining the corporate entity of Defendant Corporation, by, amongst other things, failing to hold annual meetings or maintaining appropriate corporate records,

c)  transferring assets and debts freely as between all Defendants,

d)  operating Defendant Corporation for his own benefit as the sole or majority shareholder,

e)  operating Defendant Corporation for his own benefit and maintaining control over this corporation as a closed Corporation,

f)  intermingling assets and debts of his own with Defendant Corporation,

g)  diminishing and/or transferring assets of Defendant Corporation to avoid full liability as necessary to protect his own interests, and

h)  Other actions evincing a failure to adhere to the corporate form.

41.    At all relevant times, Defendants were Plaintiffs' employers within the meaning of the FLSA and New York Labor Law. Defendants had the power to hire and fire Plaintiffs, controlled the terms and conditions of employment, and determined the rate and method of any compensation in exchange for Plaintiffs' services.

42.    In each year from 2018 to 2020, Defendants, both separately and jointly, had a gross annual volume of sales of not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated).

43.    In addition, upon information and belief, Defendants and/or their enterprise were directly engaged in interstate commerce. As an example, numerous items that were used in the Midtown East Manhattan diner on a daily basis are goods produced outside of the State of New York.

*Individual Plaintiffs*

44.    Plaintiffs are former employees of Defendants who were employed as dishwashers, food preparer, cooks, and ostensibly as delivery workers.   However, Plaintiffs Mendez and Casalez, who ostensibly were employed as delivery workers, spent over 20% of their time performing the non-tipped duties outlined above.

45.    Plaintiffs seek to represent a class of similarly situated individuals under 29 U.S.C. 216(b).

### Plaintiff Gerardo Juarez

46.    Plaintiff Juarez was employed by Defendants from approximately November 2017 until on or about May 17, 2020.

47.    Defendants employed Plaintiff Juarez as a cook.

48.    Plaintiff Juarez regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

49.    Plaintiff Juarez's work duties required neither discretion nor independent judgment.

50.    Throughout his employment with Defendants, Plaintiff Juarez regularly worked in excess of 40 hours per week.

51.    From approximately February 2018 until on or about May 2018, Plaintiff Juarez worked from approximately 4:00 p.m. until on or about 12:00 a.m., Thursdays through Tuesdays (typically 68 hours per week).

52.    From approximately June 2018 until on or about Mid July 2018, Plaintiff Juarez worked from approximately 4:00 p.m. until on or about 12:00 a.m., Wednesdays through Mondays and from approximately 12:00 p.m. until on or about 12:00 a.m., Tuesdays (typically 60 hours per week).

53.    From approximately Mid July 2018 until on or about May 2019, Plaintiff Juarez worked from approximately 12:00 p.m. until on or about 12:00 a.m., Thursdays through Tuesdays (typically 48 hours per week).

54.    From approximately June 2019 until on or about mid July 2019, Plaintiff Juarez worked from approximately 4:00 p.m. until on or about 12:00 a.m., Wednesdays to Mondays and from approximately 12:00 p.m. until on or about 12:00 a.m., Tuesdays (typically 60 hours per week).

55.    From approximately mid July 2019 until on or about May 2020, Plaintiff Juarez worked from approximately 4:00 p.m. until on or about 12:00 a.m., Thursdays through Tuesdays (typically 48 hours per week).

56.    Throughout his employment, Defendants paid Plaintiff Juarez his wages in a combination of check and cash.

57.    From approximately February 2018 until on or about May 2018, Defendants paid Plaintiff Juarez $800 per week.

58.    From approximately June 2018 until on or about mid July 2018, Defendants paid Plaintiff Juarez $1,050 per week.

59.    From approximately Mid July 2018 until on or about April 2019, Defendants paid Plaintiff Juarez $800 per week.

60.    From approximately May 2019 until on or about May 2019, Defendants paid Plaintiff Juarez $850 per week.

61.    From approximately June 2019 until on or about Mid July 2019, Defendants paid Plaintiff Juarez $1,050 per week.

62.    From approximately Mid July 2019 until on or about May 2020, Defendants paid Plaintiff Juarez $850 per week.

63.    Defendants never granted Plaintiff Juarez any breaks or meal periods of any kind.

64.    Although Plaintiff Juarez was required to keep track of his time, the system only showed him working 40 hours a week, no matter how many more hours he worked each week;  for that reason, starting in May 2019, Plaintiff Juarez only punched in when he arrived and did not bother punching out at his time of departure.

65.     Defendants required Plaintiff Juarez to sign a document, the contents of which he was not allowed to review in detail, in order to release his weekly pay.

66.     No notification, either in the form of posted notices or other means, was ever given to Plaintiff Juarez regarding overtime and wages under the FLSA and NYLL.

67.     Defendants did not provide Plaintiff Juarez an accurate statement of wages, as required by NYLL 195(3).

68.     In fact, Defendants adjusted Plaintiff Juarez's paystubs so that they reflected inaccurate wages and hours worked.

69.     Defendants did not give any notice to Plaintiff Juarez, in English and in Spanish (Plaintiff Juarez's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

70.     Defendants required Plaintiff Juarez to purchase "tools of the trade" with his own funds—including 10 chef hats per year and 5 pairs of special kitchen shoes per year.

*Plaintiff Guillermo Mendez*

71.     Plaintiff Mendez was employed by Defendants from approximately March 2018 until on or about March 12, 2020.

72.     Defendants employed Plaintiff Mendez as a dishwasher and ostensibly as a delivery worker.

73.     However, Plaintiff Mendez was also required to spend a significant portion of his work day performing the non-tipped duties described above.

74.     Although Plaintiff Mendez ostensibly was employed as a delivery worker, he spent over 20% of each day performing non-tipped work throughout his employment with Defendants.

75.     Plaintiff Mendez regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

76.     Plaintiff Mendez's work duties required neither discretion nor independent judgment.

77.    Throughout his employment with Defendants, Plaintiff Mendez regularly worked in excess of 40 hours per week.

78.    From approximately March 2018 until on or about March 12, 2020, Plaintiff Mendez worked from approximately 9:00 a.m. until on or about 5:00 p.m., Saturdays, Sundays, Mondays and Tuesdays and from approximately 5:00 p.m. until on or about 2:00 a.m., Wednesdays and Thursdays (typically 50 hours per week).

79.    From approximately March 2018 to June or July 2019, Defendants paid Plaintiff Mendez his wages in cash.

80.    From approximately June or July 2019 to March 12, 2020, Defendants paid Plaintiff Mendez his wages by check.

81.    From approximately March 2018 until on or about March 12, 2020, Defendants paid Plaintiff Mendez a fixed salary of $400 per week.

82.    Plaintiff Mendez's pay did not vary even when he was required to stay later or work a longer day than his usual schedule.

83.    For example, Defendants required Plaintiff Mendez to work an additional hour past his scheduled departure time 2 nights a week, and did not pay him for the additional time he worked.

84.    Defendants never granted Plaintiff Mendez any breaks or meal periods of any kind.

85.    Plaintiff Mendez was never notified by Defendants that his tips were being included as an offset for wages.

86.    Defendants did not account for these tips in any daily or weekly accounting of Plaintiff Mendez's wages.

87.    Plaintiff Mendez was not required to keep track of his time, nor to his knowledge, did the Defendants utilize any time tracking device such as punch cards, that accurately reflected his actual hours worked.

88.    No notification, either in the form of posted notices or other means, was ever given to Plaintiff Mendez regarding overtime and wages under the FLSA and NYLL.

89.    Defendants did not provide Plaintiff Mendez an accurate statement of wages, as required by NYLL 195(3).

90.    Defendants did not give any notice to Plaintiff Mendez, in English and in Spanish (Plaintiff Mendez's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

91.    Defendants required Plaintiff Mendez to purchase "tools of the trade" with his own funds—including 1 pedal bicycle, 1 electric bicycle, a helmet and a reflective vest.

*Plaintiff Jose Martinez Casalez*

92.    Plaintiff Casalez was employed by Defendants from approximately September 2019 until on or about March 17, 2020.

93.    Defendants employed Plaintiff Casalez as a dishwasher and ostensibly as a delivery worker.

94.    However, Plaintiff Casalez was also required to spend a significant portion of his work day performing the non-tipped duties described above.

95.    Although Plaintiff Casalez ostensibly was employed as a delivery worker, he spent over 20% of each day performing non-tipped work throughout his employment with Defendants.

96.    Plaintiff Casalez regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

97.    Plaintiff Casalez's work duties required neither discretion nor independent judgment.

98.    Throughout his employment with Defendants, Plaintiff Casalez regularly worked in excess of 40 hours per week.

99.    From approximately September 2019 until on or about March 17, 2020, Plaintiff Casalez worked from approximately 5:00 p.m. until on or about 2:00 a.m., Mondays, Tuesdays, Thursdays, Fridays, Saturdays and Sundays (typically 54 hours per week).

100.    Throughout his employment, Defendants paid Plaintiff Casalez his wages by check.

101.    From approximately September 2019 until on or about March 17, 2020, Defendants paid Plaintiff Casalez $450 per week.

102.    Plaintiff Casalez's pay did not vary even when he was required to stay later or work a longer day than his usual schedule.

103.    For example, Defendants required Plaintiff Casalez to work an additional hour past his scheduled departure time every night, and did not pay him for the additional time he worked.

104.    Defendants never granted Plaintiff Casalez any breaks or meal periods of any kind.

105.    Plaintiff Casalez was never notified by Defendants that his tips were being included as an offset for wages.

106.    Defendants did not account for these tips in any daily or weekly accounting of Plaintiff Casalez's wages.

107.    Plaintiff Casalez was not required to keep track of his time, nor to his knowledge, did the Defendants utilize any time tracking device such as punch cards, that accurately reflected his actual hours worked.

108.    No notification, either in the form of posted notices or other means, was ever given to Plaintiff Casalez regarding overtime and wages under the FLSA and NYLL.

109.    Defendants did not provide Plaintiff Casalez an accurate statement of wages, as required by NYLL 195(3).

110.    Defendants did not give any notice to Plaintiff Casalez, in English and in Spanish (Plaintiff Casalez's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

111.    Defendants required Plaintiff Casalez to purchase "tools of the trade" with his own funds—including 1 bike, 2 reflective jackets and a delivery bag.

*Plaintiff Damian Valencia*

112.    Plaintiff Valencia was employed by Defendants from approximately February 2018 until on or about March 17, 2020.

113.    Defendants employed Plaintiff Valencia as a cook.

114.    Plaintiff Valencia regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

115.    Plaintiff Valencia's work duties required neither discretion nor independent judgment.

116.    Throughout his employment with Defendants, Plaintiff Valencia regularly worked in excess of 40 hours per week.

117.    From approximately February 2018 until on or about March 17, 2020, Plaintiff Valencia worked from approximately 7:00 a.m. until on or about 3:00 p.m., Tuesdays through Fridays and from approximately 6:30 a.m. until on or about 3:00 p.m., Saturdays and Sundays (typically 49 hours per week).

118.    For approximately 2 weeks each year, Plaintiff Valencia worked from approximately 7:00 a.m. until on or about 3:00 p.m., 5 days a week and from approximately 6:30 a.m. until on or about 3:00 p.m., 2 days a week for a total of 7 days a week (typically 57 hours per week).

119.    Throughout his employment, Defendants paid Plaintiff Valencia his wages in a combination of check and cash.

120.    From approximately February 2018 until on or about April 2018, Defendants paid Plaintiff Valencia $850 per week.

121.    From approximately May 2018 until on or about December 2019, Defendants paid Plaintiff Valencia $900 per week.

122.    From approximately January 2019 until on or about December 2019, Defendants paid Plaintiff Valencia $915 per week.

123.    From approximately January 2020 until on or about March 17, 2020, Defendants paid Plaintiff Valencia $925 per week.

124.    Defendants never granted Plaintiff Valencia any breaks or meal periods of any kind.

125.    Although Plaintiff Valencia was required to keep track of his time, Defendants record keeping system falsely showed him working fewer hours than he actually worked. As a result, Plaintiff Valencia's time records only showed him working 44 hours, when he actually worked 51 hours most weeks and 58 hours some weeks.

126.    In addition, in order to get paid, defendants required Plaintiff Valencia to sign a document in which Defendants misrepresented the hours that he worked per week;  specifically, Defendants paychecks showed Plaintiff Valencia only working 44 hours a week when in actuality Plaintiff worked 51 or 58 hours per week.

127.    No notification, either in the form of posted notices or other means, was ever given to Plaintiff Valencia regarding overtime and wages under the FLSA and NYLL.

128.    Defendants did not provide Plaintiff Valencia an accurate statement of wages, as required by NYLL 195(3).

129.    In fact, Defendants adjusted Plaintiff Valencia's paystubs so that they reflected inaccurate wages and hours worked.

130.    Defendants did not give any notice to Plaintiff Valencia, in English and in Spanish (Plaintiff Valencia's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

131.    Defendants required Plaintiff Valencia to purchase "tools of the trade" with his own funds—including 4 pairs of kitchen shoes each year.

*Plaintiff Helder Martinez*

132.    Plaintiff Martinez was employed by Defendants from approximately 2009 until on or about March 17, 2020.

133.    Defendants employed Plaintiff Martinez as a food preparer and cook.

134.    Plaintiff Martinez regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

135.    Plaintiff Martinez's work duties required neither discretion nor independent judgment.

136.    Throughout his employment with Defendants, Plaintiff Martinez regularly worked in excess of 40 hours per week.

137.    From approximately February 2018 until on or about March 17, 2020, Plaintiff Martinez worked from approximately 7:00 a.m. until on or about 4:00 p.m., Mondays, from approximately 7:00 a.m. until on or about 3:00 p.m., Tuesdays, from approximately 4:00 p.m. until on or about 12:00 a.m., Wednesdays, from approximately 11:00 a.m. until on or about 9:00 p.m., Fridays, and from approximately 6:30 a.m. until on or about 4:00 p.m., Saturdays and Sundays (typically 54 hours per week).

138.    For approximately 2 to 3 weeks a year, Plaintiff Martinez worked from approximately 7:00 a.m. until on or about 4:00 p.m., Mondays, from approximately 7:00 a.m. until on or about 3:00 p.m., Tuesdays, from approximately 4:00 p.m. until on or about 12:00 a.m., Wednesdays, from approximately 4:00 p.m. until on or about 12:00 a.m., 1 day a week, from approximately 11:00 a.m. until on or about 9:00 p.m., Fridays, and from approximately 6:30 a.m. until on or about 4:00 p.m., Saturdays and Sundays for a total of 7 days a week (typically 62 hours per week).

139.    Throughout his employment, Defendants paid Plaintiff Martinez his wages in a combination of check and cash.

140.    From approximately February 2018 until on or about March 2020, Defendants paid Plaintiff Martinez $840 per week, $451 by check and the rest paid out in cash.

141.    Plaintiff Martinez's pay did not vary even when he was required to stay later or work a longer day than his usual schedule.

142.    For example, Defendants required Plaintiff Martinez to work an additional hour past his scheduled departure time 3 times a week, and did not pay him for the additional time he worked.

143.    Defendants never granted Plaintiff Martinez any breaks or meal periods of any kind. In order to get paid, Plaintiff Martinez was required to sign a document in which Defendants misrepresented the hours that he worked per week.

144.    No notification, either in the form of posted notices or other means, was ever given to Plaintiff Martinez regarding overtime and wages under the FLSA and NYLL.

145.    Defendants did not provide Plaintiff Martinez an accurate statement of wages, as required by NYLL 195(3).

146.    In fact, Defendants adjusted Plaintiff Martinez's paystubs so that they reflected inaccurate wages and hours worked.

147.    Defendants did not give any notice to Plaintiff Martinez, in English and in Spanish (Plaintiff Martinez's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

148.    Defendants required Plaintiff Martinez to purchase "tools of the trade" with his own funds—including 5 pairs of kitchen shoes.

*Plaintiff Sabas Hernandez*

149.    Plaintiff Hernandez was employed by Defendants from approximately 2005 until on or about March 15, 2020.

150.    Defendants employed Plaintiff Hernandez as a cook.

151.    Plaintiff Hernandez regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

152.     Plaintiff Hernandez's work duties required neither discretion nor independent judgment.

153.     From approximately February 2018 until on or about March 2020, Plaintiff Hernandez worked from approximately 7:00 a.m. until on or about 1:00 p.m., 6 days a week (typically 36 hours per week).

154.     For approximately 1 week in May 2020, Plaintiff Hernandez worked from approximately 7:00 a.m. until on or about 1:00 p.m., (typically 36 hours for the week).

155.     Throughout his employment, Defendants paid Plaintiff Hernandez her wages in a combination of check and cash.

156.     From approximately February 2018 until on or about the end of 2018, Defendants paid Plaintiff Hernandez $400 per week.

157.     From approximately the beginning of 2019 until on or about March 15, 2020, Defendants paid Plaintiff Hernandez $425 per week.

158.     For the 1 week worked in May 2020, Defendants paid Plaintiff Hernandez $425 for the week.

159.     Defendants never granted Plaintiff Hernandez any breaks or meal periods of any kind. In order to get paid, Plaintiff Hernandez was required to sign a document in which Defendants misrepresented the hours that he worked per week.

160.     No notification, either in the form of posted notices or other means, was ever given to Plaintiff Hernandez regarding overtime and wages under the FLSA and NYLL.

161.     Defendants did not provide Plaintiff Hernandez an accurate statement of wages, as required by NYLL 195(3).

162.     In fact, Defendants adjusted Plaintiff Hernandez's paystubs so that they reflected inaccurate wages and hours worked.

163.    Defendants did not give any notice to Plaintiff Hernandez, in English and in Spanish (Plaintiff Hernandez's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

164.    Defendants required Plaintiff Hernandez to purchase "tools of the trade" with his own funds—including 2 pairs of kitchen shoes each year.

*Defendants' General Employment Practices*

165.    At all times relevant to this Complaint, Defendants maintained a policy and practice of requiring Plaintiffs (and all similarly situated employees) to work in excess of 40 hours a week without paying them appropriate minimum wage, spread of hours pay, and overtime compensation as required by federal and state laws.

166.    Plaintiffs were victims of Defendants' common policy and practices which violate their rights under the FLSA and New York Labor Law by, *inter alia*, not paying them the wages they were owed for the hours they worked.

167.    Defendants' pay practices resulted in Plaintiffs not receiving payment for all their hours worked, and resulted in Plaintiffs' effective rate of pay falling below the required minimum wage rate.

168.    Defendants habitually required Plaintiffs to work additional hours beyond their regular shifts but did not provide them with any additional compensation.

169.    Defendants required Plaintiffs Mendez and Casalez and all other delivery workers to perform general non-tipped tasks in addition to their primary duties as delivery workers.

170.    These Plaintiffs and all similarly situated employees, ostensibly were employed as tipped employees by Defendants, although their actual duties included a significant amount of time spent performing the non-tipped duties outlined above.

171.     These Plaintiffs' duties were not incidental to their occupation as tipped workers, but instead constituted entirely unrelated general restaurant work with duties, including the non-tipped duties described above.

172.     These Plaintiffs and all other tipped workers were paid below the minimum wage and for some of them below the tip-credit rate by Defendants.

173.     However, under state law, Defendants were not entitled to a tip credit because the tipped worker's and these Plaintiffs' non-tipped duties exceeded 20% of each workday (or 2 hours a day, whichever is less) (12 N.Y.C.R.R. § 146).

174.     New York State regulations provide that an employee cannot be classified as a tipped employee on any day in which he or she has been assigned to work in an occupation in which tips are not customarily received. (12 N.Y.C.R.R. §§137-3.3 and 137-3.4). Similarly, under federal regulation 29 C.F.R. §531.56(e), an employer may not take a tip credit for any employee time if that time is devoted to a non-tipped occupation.

175.     In violation of federal and state law as codified above, Defendants classified Plaintiffs Mendez and Casalez and other tipped workers as tipped employees, and paid them at a rate that was below minimum wage and in some cases below the tip credit rate when they should have classified them as non-tipped employees and paid them at the minimum wage rate.

176.     Defendants failed to inform Plaintiffs who received tips that Defendants intended to take a deduction against Plaintiffs' earned wages for tip income, as required by the NYLL before any deduction may be taken.

177.     Defendants failed to inform Plaintiffs who received tips, that their tips were being credited towards the payment of the minimum wage.

178.     Defendants failed to maintain a record of tips earned by Plaintiffs who worked as delivery workers for the tips they received.

179.    Defendants' time keeping system did not reflect the actual hours that Plaintiffs worked.

180.    Defendants required Plaintiffs to sign a document that reflected inaccurate or false hours worked.

181.    Defendants paid Plaintiffs their wages in a combination of check and cash.

182.    Defendants failed to post at the workplace, or otherwise provide to employees, the required postings or notices to employees regarding the applicable wage and hour requirements of the FLSA and NYLL.

183.    Upon information and belief, these practices by Defendants were done willfully to disguise the actual number of hours Plaintiffs (and similarly situated individuals) worked, and to avoid paying Plaintiffs properly for their full hours worked.

184.    Defendants engaged in their unlawful conduct pursuant to a corporate policy of minimizing labor costs and denying employees compensation by knowingly violating the FLSA and NYLL.

185.    Defendants' unlawful conduct was intentional, willful, in bad faith, and caused significant damages to Plaintiffs and other similarly situated former workers.

186.    Defendants failed to provide Plaintiffs  and other employees with accurate wage statements at the time of their payment of wages, containing: the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; net wages; the regular hourly rate or rates of pay; the overtime rate or rates of pay; the number of regular hours worked; and the number of overtime hours worked, as required by NYLL §195(3).

187.    Defendants failed to provide Plaintiffs  and other employees, at the time of hiring and on or before February 1 of each subsequent year, a statement in English and the employees' primary

language, containing: the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; and the telephone number of the employer, as required by New York Labor Law §195(1).

## FLSA COLLECTIVE ACTION CLAIMS

188.    Plaintiffs bring their FLSA minimum wage, overtime compensation, and liquidated damages claims as a collective action pursuant to FLSA Section 16(b), 29 U.S.C. § 216(b), on behalf of all similarly situated persons (the "FLSA Class members"), i.e., persons who are or were employed by Defendants or any of them, on or after the date that is three years before the filing of the complaint in this case (the "FLSA Class Period").

189.    At all relevant times, Plaintiffs and other members of the FLSA Class were similarly situated in that they had substantially similar job requirements and pay provisions, and have been subject to Defendants' common practices, policies, programs, procedures, protocols and plans including willfully failing and refusing to pay them the required minimum wage, overtime pay at a one and one-half their regular rates for work in excess of forty (40) hours per workweek under the FLSA, and willfully failing to keep records under the FLSA.

190.    The claims of Plaintiffs stated herein are similar to those of the other employees.

## FIRST CAUSE OF ACTION

## VIOLATION OF THE MINIMUM WAGE PROVISIONS OF THE FLSA

191.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

192.    At all times relevant to this action, Defendants were Plaintiffs' employers within the meaning of the Fair Labor Standards Act, 29 U.S.C. § 203(d).  Defendants had the power to hire and fire Plaintiffs (and the FLSA Class Members), controlled the terms and conditions of their

employment, and determined the rate and method of any compensation in exchange for their employment.

193.    At all times relevant to this action, Defendants were engaged in commerce or in an industry or activity affecting commerce.

194.    Defendants constitute an enterprise within the meaning of the Fair Labor Standards Act, 29 U.S.C. § 203 (r-s).

195.    Defendants failed to pay Plaintiffs (and the FLSA Class members) at the applicable minimum hourly rate, in violation of 29 U.S.C. § 206(a).

196.    Defendants' failure to pay Plaintiffs (and the FLSA Class members) at the applicable minimum hourly rate was willful within the meaning of 29 U.S.C. § 255(a).

197.    Plaintiffs (and the FLSA Class members) were damaged in an amount to be determined at trial.

## SECOND CAUSE OF ACTION

### VIOLATION OF THE OVERTIME PROVISIONS OF THE FLSA

198.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

199.    Defendants, in violation of 29 U.S.C. § 207(a)(1), failed to pay Plaintiffs (and the FLSA Class members) overtime compensation at a rate of one and one-half times the regular rate of pay for each hour worked in excess of forty hours in a work week.

200.    Defendants' failure to pay Plaintiffs (and the FLSA Class members), overtime compensation was willful within the meaning of 29 U.S.C. § 255(a).

201.    Plaintiffs (and the FLSA Class members) were damaged in an amount to be determined at trial.

## THIRD CAUSE OF ACTION

### VIOLATION OF THE NEW YORK MINIMUM WAGE ACT

202.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

203.    At all times relevant to this action, Defendants were Plaintiffs' employers within the meaning of the N.Y. Lab. Law §§ 2 and 651.  Defendants had the power to hire and fire Plaintiffs, controlled the terms and conditions of their employment, and determined the rates and methods of any compensation in exchange for their employment.

204.    Defendants, in violation of NYLL § 652(1) and the supporting regulations of the New York State Department of Labor, paid Plaintiffs less than the minimum wage.

205.    Defendants' failure to pay Plaintiffs the minimum wage was willful within the meaning of N.Y. Lab. Law § 663.

206.    Plaintiffs were damaged in an amount to be determined at trial.

### FOURTH CAUSE OF ACTION

### VIOLATION OF THE OVERTIME PROVISIONS

### OF THE NEW YORK STATE LABOR LAW

207.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

208.    Defendants, in violation of N.Y. Lab. Law § 190 *et seq*., and supporting regulations of the New York State Department of Labor, failed to pay Plaintiffs overtime compensation at rates of one and one-half times the regular rate of pay for each hour worked in excess of forty hours in a work week.

209.    Defendants' failure to pay Plaintiffs overtime compensation was willful within the meaning of N.Y. Lab. Law § 663.

210.    Plaintiffs were damaged in an amount to be determined at trial.

### FIFTH CAUSE OF ACTION

### VIOLATION OF THE SPREAD OF HOURS WAGE ORDER

### OF THE NEW YORK COMMISSIONER OF LABOR

211.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

212.    Defendants failed to pay Plaintiffs one additional hour's pay at the basic minimum wage rate before allowances for each day Plaintiffs' spread of hours exceeded ten hours in violation of NYLL §§ 650 *et seq.* and 12 N.Y.C.R.R. §§ 146-1.6.

213.    Defendants' failure to pay Plaintiffs an additional hour's pay for each day Plaintiffs' spread of hours exceeded ten hours was willful within the meaning of NYLL § 663.

214.    Plaintiffs were damaged in an amount to be determined at trial.

**SIXTH CAUSE OF ACTION**

**VIOLATION OF THE NOTICE AND RECORDKEEPING**

**REQUIREMENTS OF THE NEW YORK LABOR LAW**

215.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

216.    Defendants failed to provide Plaintiffs with a written notice, in English and in Spanish (Plaintiffs' primary language), containing: the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; and the telephone number of the employer, as required by NYLL §195(1).

217.    Defendants are liable to each Plaintiff in the amount of $5,000, together with costs and attorneys' fees.

**SEVENTH CAUSE OF ACTION**

**VIOLATION OF THE WAGE STATEMENT PROVISIONS**

**OF THE NEW YORK LABOR LAW**

218.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

219.    With each payment of wages, Defendants failed to provide Plaintiffs with an accurate statement listing each of the following: the dates of work covered by that payment of wages; name

of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; net wages; the regular hourly rate or rates of pay; the overtime rate or rates of pay; the number of regular hours worked; and the number of overtime hours worked, as required by NYLL 195(3).

220.    Defendants are liable to each Plaintiff in the amount of $5,000, together with costs and attorneys' fees.

## EIGHTH CAUSE OF ACTION

## RECOVERY OF EQUIPMENT COSTS

221.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

222.    Defendants required Plaintiffs to pay, without reimbursement, the costs and expenses for purchasing and maintaining equipment and "tools of the trade" required to perform their jobs, further reducing their wages in violation of the FLSA and NYLL.  29 U.S.C.  § 206(a); 29 C.F.R. § 531.35; N.Y. Lab. Law §§ 193 and 198-b.

223.    Plaintiffs were damaged in an amount to be determined at trial.

## NINTH CAUSE OF ACTION
## UNLAWFUL DEDUCTIONS FROM WAGES IN VIOLATION
## OF THE NEW YORK LABOR LAW

224.    Plaintiffs repeat and reallege all paragraphs above as though set forth fully herein.

225.    At all relevant times, Defendants were Plaintiffs' employers within the meaning of the N.Y. Lab. Law §§ 2 and 651.

226.    Defendants made unlawful deductions from Plaintiffs' wages; specifically, Defendants deducted hours from certain Plaintiffs by not paying them for all hours worked.

227.    The deductions made from Plaintiffs' wages were not authorized or required by law.

228.    Through their knowing and intentional efforts to take unauthorized deductions from Plaintiffs' wages, Defendants willfully violated NYLL, Article 6, §§ 190 *et seq.*, and supporting

New York State regulations.

Plaintiffs were damaged in an amount to be determined at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment against Defendants by:

(a) Designating this action as a collective action and authorizing prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to all putative class members apprising them of the pendency of this action, and permitting them to promptly file consents to be Plaintiffs in the FLSA claims in this action;

(b) Declaring that Defendants violated the minimum wage provisions of, and associated rules and regulations under, the FLSA as to Plaintiffs and the FLSA Class members;

(c) Declaring that Defendants violated the overtime wage provisions of, and associated rules and regulations under, the FLSA as to Plaintiffs and the FLSA Class members;

(d) Declaring that Defendants violated the recordkeeping requirements of, and associated rules and regulations under, the FLSA with respect to Plaintiffs' and the FLSA Class members' compensation, hours, wages, and any deductions or credits taken against wages;

(e) Declaring that Defendants' violations of the provisions of the FLSA were willful as to Plaintiffs and the FLSA Class members;

(f) Awarding Plaintiffs and the FLSA Class members damages for the amount of unpaid minimum wage, overtime compensation, and damages for any improper deductions or credits taken against wages under the FLSA as applicable;

(g) Awarding Plaintiffs and the FLSA Class members liquidated damages in an amount equal to 100% of their damages for the amount of unpaid minimum wage and overtime compensation, and damages for any improper deductions or credits taken against wages under the FLSA as applicable pursuant to 29 U.S.C. § 216(b);

(h)      Declaring that Defendants violated the minimum wage provisions of, and rules and orders promulgated under, the NYLL as to Plaintiffs;

(i)      Declaring that Defendants violated the overtime wage provisions of, and rules and orders promulgated under, the NYLL as to Plaintiffs;

(j)      Declaring that Defendants violated the spread-of-hours requirements of the NYLL and supporting regulations as to Plaintiffs;

(k)      Declaring that Defendants violated the notice and recordkeeping requirements of the NYLL with respect to Plaintiffs' compensation, hours, wages and any deductions or credits taken against wages;

(l)      Declaring that Defendants' violations of the provisions of the NYLL and spread of hours wage order were willful as to Plaintiffs;

(m)      Awarding Plaintiffs damages for the amount of unpaid minimum wage and overtime compensation, and for any improper deductions or credits taken against wages, as well as awarding spread of hours pay under the NYLL as applicable

(n)      Awarding Plaintiffs damages for Defendants' violation of the NYLL notice and recordkeeping provisions, pursuant to NYLL §§198(1-b), 198(1-d);

(o)      Awarding Plaintiffs liquidated damages in an amount equal to one hundred percent (100%) of the total amount of minimum wage, overtime compensation, and spread of hours pay shown to be owed pursuant to NYLL § 663 as applicable; and liquidated damages pursuant to NYLL § 198(3);

(p)      Awarding Plaintiffs and the FLSA Class members pre-judgment and post-judgment interest as applicable;

(q)      Awarding Plaintiffs and the FLSA Class members the expenses incurred in this action, including costs and attorneys' fees;

(r)    Providing that if any amounts remain unpaid upon the expiration of ninety days following issuance of judgment, or ninety days after expiration of the time to appeal and no appeal is then pending, whichever is later, the total amount of judgment shall automatically increase by fifteen percent, as required by NYLL § 198(4); and

(s)    All such other and further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiffs demand a trial by jury on all issues triable by a jury.

Dated: New York, New York

August 13, 2020

MICHAEL FAILLACE & ASSOCIATES, P.C.

By:    _____/s/ Michael Faillace_____
       Michael Faillace [MF-8436]
       60 East 42nd Street, Suite 4510
       New York, New York 10165
       Telephone: (212) 317-1200
       Facsimile: (212) 317-16
       *Attorneys for Plaintiffs*

# Michael Faillace & Associates, P.C.

Employment and Litigation Attorneys

60 E 42nd Street, Suite 4510
New York, New York 10165
Faillace@employmentcomplieance.com

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

May 20, 2020

BY ELECTRONIC SIGNATURE

TO:     Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:              <u>Gerardo Juarez</u>

Legal Representative / Abogado:     <u>Michael Faillace & Associates, P.C.</u>

Signature / Firma:          _____

Date / Fecha:               <u>20 de Mayo 2020</u>

*Certified as a minority-owned business in the State New York*          1

# Michael Faillace & Associates, P.C.

Employment and Litigation Attorneys

60 E 42nd Street, Suite 4510
New York, New York 10165
Faillace@employmentcomplieance.com

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

May 20, 2020

BY ELECTRONIC SIGNATURE

TO:     Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                          Guillermo Mendez

Legal Representative / Abogado:         Michael Faillace & Associates, P.C.

Signature / Firma:

Date / Fecha:                           20 de Mayo 20

# Michael Faillace & Associates, P.C.

### Employment and Litigation Attorneys

60 E 42nd Street, Suite 4510
New York, New York 10165
Faillace@employmentcomplieance.com

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

May 27, 2020

BY ELECTRONIC SIGNATURE

TO:     Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                          Helder Martinez

Legal Representative / Abogado:     Michael Faillace & Associates, P.C.

Signature / Firma:                       _Helder Martinez_
                                                Helder Martinez

Date / Fecha:                             27 de Mayo 2020

# Michael Faillace & Associates, P.C.

### Employment and Litigation Attorneys

60 E 42nd Street, Suite 4510
New York, New York 10165
Faillace@employmentcomplieance.com

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

May 20, 2020

BY ELECTRONIC SIGNATURE

TO:     Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                       <u>Jose Martinez Casalez</u>

Legal Representative / Abogado:      Michael Faillace & Associates, P.C.

Signature / Firma:

Date / Fecha:                        <u>20 de Mayo 2020</u>

*Certified as a minority-owned business in the State New York*                1

# Michael Faillace & Associates, P.C.

Employment and Litigation Attorneys

60 E 42nd Street, Suite 4510                                          Telephone: (212) 317-1200
New York, New York 10165                                        Facsimile: (212) 317-1620
Faillace@employmentcomplieance.com

June 5, 2020

BY ELECTRONIC SIGNATURE

TO:      Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                              Sabas Hernandez

Legal Representative / Abogado:      Michael Faillace & Associates, P.C.

Signature / Firma:                            _Sabas Hernandez_

Date / Fecha:                                   5 de junio 2020

*Certified as a minority-owned business in the State New York*          1